IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID BRODY,

                              Plaintiff,                          OPINION and ORDER

      v.
                                                                 23-cv-293-jdp
COSTCO WHOLESALE CORPORATION,

                              Defendant.

---

This case arises from defendant Costco Wholesale Corporation's decision not to hire plaintiff David Brody as a forklift driver. Brody, who is deaf, has worked for Costco since 2012. In 2018 he applied for full-time forklift driver positions, first in Costco's Middleton store and then at its Sun Prairie store. Brody turned down Costco's offer for a night-shift forklift driver position in Middleton and was not selected for the position in Sun Prairie. Brody contends that Costco's failure to offer him the forklift driver positions he wanted was discrimination based on his disability and retaliation against him for filing a disability discrimination claim against one of his managers, in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act.

Costco moves for summary judgment. Dkt. 15. The court will grant summary judgment to Costco on all of Brody's claims. As for his claims concerning the Middleton position, Brody did not suffer an adverse employment action because was offered a full-time forklift driver position that he turned down because of the timing of the shift. As for his claims concerning the Sun Prairie position, Costco had legitimate reasons for hiring another applicant: the other applicant had a better safety record. Brody has not adduced evidence sufficient to support a

reasonable jury finding that Costco's reasons for preferring the other candidate were a pretext for discrimination or retaliation.

UNDISPUTED FACTS

## A. Evidentiary issues

The court begins with two evidentiary issues.

### 1. Rule 56(d) request

Brody asks the court to defer ruling on Costco's motion until Brody can complete additional depositions that he contends Costco unreasonably withheld. Under Federal Rule of Civil Procedure 56(d) courts may defer considering or deny a motion for summary judgment to allow time for the non-moving party to take discovery essential for its opposition to the motion. But a plaintiff seeking such relief must identify specific discovery that he believes would help him prove his claims and show that he exercised reasonable diligence in attempting to conduct the discovery sooner. *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019). Brody identifies three witnesses that he did not depose before the dispositive motion deadline: a Rule 30(b)(6) corporate representative and two individuals who were involved in decisions related to Brody's forklift driving. Brody contends that these depositions are necessary for getting binding corporate testimony about Costco's procedures regarding deaf employees, testimony from Justin Ferguson (Brody's manager in Sun Prairie) about Ferguson's 2019 decision to fill the forklift driver position with another applicant, and testimony from a manager with knowledge of comparative qualifications of employees who applied for forklift driver positions. Dkt. 35, ¶¶ 12–14. But Brody does not explain what testimony from those witnesses would help him prove his claims. "[A] fond hope that more fishing might net some

2

good evidence" is not enough to establish that additional discovery is essential for Brody's opposition to the motion for summary judgment. *Smith*, 933 F.3d at 864.

And the procedural history of this case shows that Brody failed to exercise diligence in seeking these depositions. The parties first notified the court that they had been having difficulty completing depositions and asked to extend the schedule in May 2024, just three days before the original dispositive motion deadline. The court granted the parties' joint request and extended the trial date and deadlines in the case by more than four months to allow them to complete depositions. Dkt. 12. The day before the new dispositive motion deadline, the parties jointly moved to extend that deadline by a month "to complete the remaining depositions each side intends to take." Dkt. 13, at 1. The court denied the motion but gave them an additional week to file their dispositive motions. Dkt. 14. Two weeks after Costco timely filed its motion for summary judgment, Brody moved to compel the depositions at issue in his Rule 56(d) request and asked the court to stay briefing on Costco's motion for summary judgment. Magistrate Judge Boor granted Brody's motion to compel the depositions but denied his request to stay summary judgment briefing because Brody did not timely file his discovery motion, despite having been given "a generous multiple-month extension of the case deadlines specifically to take any remaining depositions." Dkt. 32, at 4. Brody does not provide any additional information in his opposition to Costco's motion for summary judgment to show that he diligently pursued taking the depositions during the additional four months he was given for that purpose. So the court will deny the request to defer a ruling on Costco's summary judgment motion.x

2. **Justin Ferguson declaration**

Brody asks the court to disregard the "self-serving" declaration from Ferguson that Costco submitted in support of its motion because he did not depose Ferguson. But "a witness's potential self-interest in testifying about matters for which he or she has direct knowledge goes to the weight and credibility of the testimony, not to its admissibility," and the Seventh Circuit has "repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge." *Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005); *see also Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). Ferguson's declaration describes his experiences with Brody related to the events at issue in this litigation, and Brody does not contend that any specific part of the declaration is not based on Ferguson's personal knowledge. Brody's own lack of diligence in failing to depose Ferguson is not a reason for the court to disregard admissible evidence.

B. **Background**

The following facts are undisputed except where noted.

Plaintiff David Brody has worked for defendant Costco Wholesale Corporation since November 2012, when he began working at the company's Middleton store as an assistant cashier. At that time, Justin Ferguson was the general manager at Middleton, and he and the other Costco employees Brody worked with knew that Brody is deaf.

In early 2014, Brody told Ferguson and his intermediate managers that he wanted to be trained to drive a forklift. Ferguson and the other managers were supportive of Brody's goal, and Ferguson signed off for Brody to train with the intermediate managers. Ferguson reached out to Costco's Integrated Leave and Accommodations Department for guidance on a potential accommodation of the auditory requirements for forklift drivers, Dkt. 16-18, at 2, which

specified that forklift operators must "[b]e able to **hear voice warnings** from 40-feet away in any direction," Dkt 16-11, at 15. Brody wore hearing aids when he began training with the intermediate managers in January 2015. Dkt. 19 (Brody Dep. 35:11–36:16).

In February 2015, Brody applied for and was given a forklift driver position on the night shift. This meant that he would drive a forklift after the store closed, from 8:30 p.m. to 11:00 p.m. *Id.* (Brody Dep. 48:5–16). After his first few weeks of training, Brody stopped wearing his hearing aids because he found them distracting. *Id.* (Brody Dep. 36:21–37:8). The parties dispute whether Brody was ever formally certified as a forklift driver. But they agree that Brody worked in the forklift driver position for approximately six months, and then he was promoted to the role of fresh food supervisor. In the new role, forklift driving was not a primary responsibility, but Brody continued to regularly operate forklifts during his shifts as supervisor to cover for other employees. *Id.* (Brody Dep. 49:21–50:13).

In August 2015, Ferguson transferred from general manager of the Middleton store to the general manager of Costco's Sun Prairie store. Silvia Comunale replaced Ferguson at the Middleton store, where she indirectly supervised Brody.

In February 2016, Brody was driving a forklift and accidentally ripped a hole in the top of a trailer that he was loading. Brody received a "counseling notice" for this accident for "failure to perform work as required." Dkt. 16-13, at 2. The counseling notice says that Brody would be "retrained and recertified," but neither party provided evidence of whether Brody was retained or recertified at that point. *Id.* Several managers also testified that they observed Brody have near misses or reckless driving with the forklift that were not documented in his personnel record. Dkt. 20 (Day Dep. 60:8–16); Dkt. 22 (Magdaleno Dep. 26:20–28:19).

Brody does not dispute that he had accidents or near misses, but he asserts that forklift accidents are common and that his coworkers had similar numbers of accidents or near misses.

At some point, Comunale learned that, when Brody was initially being trained to operate a forklift, he had worn a hearing aid. In December 2016, Comunale reached out to Costco's Integrated Leave and Accommodations department about whether Brody should be wearing the hearing aid. Brody objected to wearing the hearing aid because he found it distracting. Dkt. 16-15, at 3–4. After a discussion between Comunale, Brody, and someone from the integrated leave group, Comunale decided that Brody could continue to operate the forklift without the hearing aid going forward. *Id.*, at 2.

In July 2017, Brody made a lateral move to become a night merchandise supervisor. Dkt. 19 (Brody Dep. 164:6–10). A month later, Brody filed a charge with the Equal Employment Opportunity Commission (EEOC) and Wisconsin Equal Rights Division alleging that Comunale had discriminated against him by treating him differently than others and by refusing to put his name in the pool of candidates to be promoted to manager. Dkt. 19 (Brody Dep. 164:15–165:13).[1]

In the fall of 2017, Brody had several additional forklift driving accidents. He received coaching for forklift accidents that occurred on September 12 and September 13, 2017, and a counseling notice for an accident on October 4, 2017, that required him to be recertified. Dkt. 16-13, at 4–5. The parties dispute whether Brody completed his recertification in October 2017 and whether Costco considered Brody certified for forklift driving at that point.

---

[1] Brody testified that he filed his complaint in August 2017. Dkt. 164 (Brody Dep. 164:15–17). But the earliest EEOC charge in the record is dated December 2017. Dkt. 16-17, at 3. The parties do not address this discrepancy, so the court will rely on Brody's version of the timing of his complaint in deciding Costco's motion.

In April 2018, Brody applied for a posting for a fulltime forklift driver position in the Middleton store. Three other employees who applied were offered the position on the morning shift and Brody was offered the position on the night shift. Brody turned down the offer because he was not able to work the night shift at that time because of personal commitments outside of work.

In June 2018, Brody transferred to the Sun Prairie store, where Ferguson was the general manager, and Brody applied for a fulltime forklift driver position there. When he submitted that application, questions arose about Brody's certification because Ferguson believed that Brody's training had been ongoing when Ferguson left Middleton and that he had not signed the permit for Brody to be officially certified as a forklift operator. Dkt. 27, ¶¶ 11–13. As part of the application process at Sun Prairie, Brody passed a written test as well as a driving test, but Ferguson held off on approving Brody for the position to check on Brody's certification and on whether Brody needed to wear hearing aids while driving the forklift. Dkt. 27-1.

Ferguson reached out to managers at the Middleton store about Brody's driving and learned that the managers there did not consider him a safe driver. Ferguson informed Brody that those "concerns warrant[ed] further investigation" and said that he would hold open the position for which Brody had applied until Ferguson could complete his investigation. Dkt. 27-1. Approximately two months later, Ferguson informed Brody that the investigation "raise[d] concerns about [Brody's] ability to safely operate a forklift" and that the position had been given to a driver with a better safety record. Dkt. 27-2.

ANALYSIS

Brody brings claims against Costco under the ADA and the Rehabilitation Act, contending that Costco discriminated against him because he is deaf and because he filed a discrimination complaint with the EEOC. He identifies two adverse employment actions: (1) not offering him a day shift fulltime forklift driver position in Middleton in April 2018; and (2) not selecting him for a fulltime forklift driver position in Sun Prairie in 2019.

Costco is entitled to summary judgment if it shows that there are no genuine issues of material fact and is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the evidence in the light most favorable to Brody and draws all reasonable inferences in his favor. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). But in response to Costco's motion, Brody bears the burden of identifying evidence that would allow a reasonable jury to find in his favor on his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## A. Disability and retaliation claims

The ADA and Rehabilitation Act both prohibit employers from discriminating against employees on the basis of disability and from retaliating against employees who assert their right to be free from such discrimination. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600–01 (7th Cir. 2011). "The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are materially identical." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (internal quotation and citation omitted). To prove a discrimination claim, a plaintiff must show the following: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) the adverse action was

8

caused by his disability. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022).[2] To prove a retaliation claim, a plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *Id.* To prove causation, a plaintiff must show "that the protected category or action was the 'but-for' cause of the challenged adverse employment action." *Id.*, at 440.

The parties use the burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), to analyze Brody's claims. Under that framework, the Brody must present evidence on the elements of a prima facie case. *Lewis v. Indiana Wesleyan University*, 36 F.4th 755, 759 (7th Cir. 2022). In cases like Brody's in which the alleged adverse action is failure to hire an applicant based on his disability or protected activity, a plaintiff makes a prima facie case by showing that (1) he is a member of a protected class, (2) he applied for and was qualified for an open position, (3) he was rejected for the position, and (4) the position was filled with a person not in the protected class who had similar or lesser qualifications than the plaintiff. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). If Brody presents evidence from which a reasonable jury could find that these elements are met, then the burden shifts to Costco to present evidence on its reason for taking the adverse action. *Lewis*, 36 F.4th 760. If Costco presents evidence of a nondiscriminatory and nonretaliatory reason for its adverse action, then Brody must show that Costco's reason is a pretext for discrimination. *Id.*

---

[2] To prove a claim under the Rehabilitation Act plaintiffs must also show that the disability discrimination was in a program that receive federal funding. *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 504 (7th Cir. 2017). The parties dispute whether Brody has provided sufficient evidence for a reasonable jury to find that Costco receives federal funding. But the court need not decide that issue because Brody's Rehabilitation Act claims fail on the merits for the same reasons as his ADA claims.

The *McDonnell Douglas* framework can be an efficient way to organize, present, and assess evidence in discrimination cases. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). But the Seventh Circuit has encouraged district courts to focus on the central issue, which is whether the evidence as a whole would permit a reasonable jury to find that the plaintiff's protected trait or action caused the employer's adverse action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (citing *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Here all of Brody's arguments focus on whether there is sufficient evidence for a reasonable jury to conclude that Costco's reasons for its treatment of his applications to be a forklift driver were a pretext for discrimination, so the analysis is the same under the *McDonnell Douglas* framework as under *Ortiz*.

The court will analyze Brody's discrimination and retaliation claims together for each of the two alleged adverse actions because there is little difference between Brody's argument and evidence for the two types of claims. The court will begin with Costco's decision concerning Brody's April 2018 application for the full-time forklift driver position in Middleton and then address his subsequent application for the same position in Sun Prairie.

### 1. April 2018 application for the forklift driver position in Middleton

Brody contends that he was the most qualified candidate for the day shift full-time forklift driver position at Middleton and that, at a minimum, there are material fact questions about whether Comunale's reasons for offering him a night shift were a pretext for discrimination or retaliation. Brody devotes much of his brief to discussing the applicants' comparative qualifications and evidence of pretext. But he fails to address the threshold issue raised in Costco's opening brief: that Costco did not reject his application to be a full-time forklift driver, so he did not suffer an adverse employment action.

Failure to hire an applicant constitutes an adverse employment action. *Trahanas v. Nw. Univ.*, 64 F.4th 842, 856 (7th Cir. 2023). But Brody's claim concerning his April 2018 is not a straightforward failure to hire claim because Costco offered Brody a night shift full-time forklift driver position that he turned down because he wanted to work the day shift. Dkt. 37, ¶¶ 36–37. The question at issue for Brody's April 2018 application is whether offering Brody a night shift position instead of the day shift position offered to the other candidates was an adverse action. Neither party cites any authority directly related to this question. In general, an employer's conduct qualifies as an adverse action if it causes the employee "some injury respecting her employment terms or conditions" that left the employee "worse off." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024).[3]

Brody contends that the night shift "was known to be less desirable than the position for which he applied." Dkt. 33, at 11. But the job posting to which Brody applied was not specifically a day shift rather than a night shift. *See* Dkt. 16-12. Brody admits that the pay and number of hours for the two shifts are the same, Dkt. 37, ¶ 39, and he offers no evidence that Comunale (or anyone else at Costco) knew that he had personal commitments that would prevent him from accepting the night shift full-time forklift driver position if offered it.

The parties agree that the only difference aside from the time of the schedule is that the morning shift involves more time spent driving the forklift. Dkt. 37, ¶ 39. But there is nothing inherently injurious about one shift involving more or less driving than another, and Brody does not explain how being put on a shift in which he would spend less time driving a forklift would have made him worse off than a shift with more driving. Nor does Brody explain the

---

[3] *Muldrow* involved a Title VII discrimination claim, but the Seventh Circuit applies the same analysis under the ADA and Title VII when considering whether an employer's conduct was an adverse action. *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 648 (7th Cir. 2023).

basis of his contention that the night shift was "less desirable." *Cf. McGowan v. City of Eufala*, 472 F.3d 736, 743 (10th Cir. 2006) (denial of an employee's request for a shift change was insufficient to show an adverse employment action when "her stated desire for change was purely for personal reasons"). Because Brody has offered no evidence that there is a material difference between the night shift forklift driver position he was offered and the day shift position that he contends Costco should have offered him, no reasonable jury could conclude that Brody suffered an adverse employment action when he applied to be a forklift driver in April 2018.

### 2. Application for forklift driver position in Sun Prairie

When Brody applied for the forklift driver position in Sun Prairie, managers there initially told him he was qualified, but ultimately selected someone else for the position, Michael Vandenbrook. Costco contends that Ferguson offered the forklift driver position to Vandenbrook instead of Brody because Vandenbrook had a better safety record. Dkt. 27-2. Brody contends that Vandenbrook had similar or lesser qualifications than him and that Costco's reason for selecting Vandenbrook was a pretext for discrimination and retaliation against Brody. The issue of Brody's qualifications is intertwined with the issue of whether Costco's reasons for rejecting him were pretextual, so the court will address the two issues together.

Brody's safety record in January 2019 was worse than Vandenbrook's safety record. Brody had four documented accidents since he began operating forklifts, all of which occurred when he was in positions for which forklift driving was not his primary responsibility. Dkt. 16-13. In contrast, Vandenbrook had a single counseling notice for a forklift accident on his record in January 2019. Dkt. 27, ¶ 22; Dkt. 27-3. This is fatal to Brody's contention that

he had a better safety record than Vandenbrook and that Costco's safety concerns were pretextual. No reasonable jury could find that Vandenbrook had similar or lesser qualifications than Brody because Vandenbrook had three fewer accidents than Brody at the time Costco selected Vandenbrook.

Brody contends that there is a factual dispute about whether Vandenbrook had a better safety record because Brody knew of Vandenbrook having four forklift accidents between December 2018 and February 2019. Dkt. 35-4, at 6. But three of the four accidents that Brody identifies occurred after Ferguson selected Vandenbrook for the forklift driver position. *Compare* Dkt. 27-2 (Ferguson letter to Brody dated January 14, 2019), *with* Dkt. 35-4, at 6 (listing the dates of Vandenbrook's accidents as November 2018, January 26, 2019, February 8, 2019, and February 17, 2019). So Brody's testimony about Vandenbrook's accidents does not contradict the evidence that Vandenbrook had a better safety record than Brody when Ferguson offered Vandenbrook the forklift driver position.

Brody also contends that a reasonable jury could find that Ferguson's concern about his safety record was a pretext for discrimination and retaliation because Brody's certification status and driving received more scrutiny than that of hearing drivers, especially after he filed his discrimination complaint against Comunale. Dkt. 33, at 14. The parties agree that managers have wide discretion to decide when to document accidents or near misses. Dkt. 37, ¶ 73. The court takes Brody's argument to be that the very fact that his accidents were put in his record and that the Middleton managers raised concerns about the safety of his driving is evidence of discrimination and retaliation because those same managers did not raise concerns about hearing drivers that got into accidents.

13

But the only evidence that Brody relies on to show that hearing drivers had comparable accidents is the list of other accidents he submitted to the EEOC. Brody does not explain whether he had personal knowledge of any of those accidents, which would be necessary for any testimony from Brody to be admissible. In addition, Brody offers no evidence that the managers who documented his accidents and thought he was a reckless driver were aware of and failed to document similar conduct by hearing drivers. Brody criticizes Costco for relying on testimony from Brody's intermediate managers concerning undocumented incidents of his reckless driving as evidence in this case, but that testimony demonstrates that Brody himself had near misses with the forklift that were not documented in his record. Brody had the burden of showing that Costco treated him differently than similarly situated employees to establish a prima facie case of discrimination or retaliation, which requires that he show the other employees were directly comparable to him in all material respects. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021). Brody's speculation that other drivers had more undocumented accidents than him is insufficient to show that the managers who reported concerns with his driving were singling him out based on his disability or as retaliation for his EEOC charge against Comunale.

Brody also contends that Ferguson's reference to the auditory requirements of the forklift driver position and Brody's refusal to wear hearing aids in Ferguson's November 2018 letter shows that the concern about safety was pretextual because Ferguson was specifically referencing Brody's disability. Dkt. 33, at 12–13. But the ADA does not require an employer to ignore an employee's disability when considering the employee's job application; it simply requires that the employer not take adverse action against the employee if he is qualified to perform the job, including if the employee can perform the job with reasonable

14

accommodations. 42 U.S.C. § 12112(b)(5). An employer is entitled to consider whether an employee can perform the requirements of the job even if part of that consideration includes disability-related concerns about the employee capabilities. *See Garg v. Potter*, 521 F.3d 731, 736–37 (7th Cir. 2008). Ferguson's decision to consider whether Brody needed an accommodation to meet the requirements of being a forklift driver is not evidence that Ferguson's concerns about Brody's safety record were pretextual.

In sum, no reasonable jury could find that Costco's decision to select a more qualified applicant for the Sun Prairie forklift driver position was caused by Brody's disability or protected activity. So the court will grant summary judgment to Costco on Brody's claim concerning his application to be a forklift driver at the Sun Prairie location.


ORDER


IT IS ORDERED that defendant's motion for summary judgment, Dkt. 15, is GRANTED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered January 23, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15